IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| **LIPPINCOTT PROPERTIES, INC** | : | Chapter 11 |
| | : | |
| | : | Case No. 08-17249 (BIF) |
| *DEBTOR* | : | |

DISCLOSURE STATEMENT
DATED JANUARY 29, 2009

**I.  INTRODUCTION**

  **A.  <u>Background</u>**

    Lippincott Properties, Inc., hereinafter referred to as "Debtor", is a Corporation organized and existing in the State of New York who has been engaged in Bankruptcy Proceedings since the filing of a Voluntary Petition under Chapter 11 of Title 11 of the United Stated Code on November 3, 2008.  The bankruptcy reorganization proceeding is pending before the Honorable Bruce I. Fox, United States Bankruptcy Judge for the Eastern District of Pennsylvania, under Case No. 08-17249(BIF).

  Since the bankruptcy filing, the Debtor has continued in the legal possession of its sole asset and in control of the operation of its financial affairs pursuant to the authority set forth in Sections 1107 and 1108 of the Bankruptcy Code.  The Debtor now submits this Disclosure Statement dated January 29, 2009, supporting a Plan of Reorganization of the same date. The Plan shall hereinafter be referred to as the "Plan," and this Disclosure Statement shall be referred to as the "Disclosure Statement."  The Debtor firmly believes its Plan as filed provides for the

optimum payments to creditors within the shortest practical and realistic period of time giving consideration to the creditors, the Debtor's resources, and financial abilities.

### B. Purpose of Disclosure Statement

The Debtor provides this Disclosure Statement to all creditors and parties in interest, including the Office of the United States Trustee, pursuant to §1125 of Title 11 of the United States Code, for the purpose of providing adequate information about the Debtor, its financial position, earnings abilities, and resources and in support of soliciting acceptances to the Debtor's Plan of Reorganization.

This Disclosure Statement has been submitted to the Bankruptcy Court for review and comment by any creditor or interested party and, after notice to all creditors and other interested parties of a hearing, and the occurrence of that hearing, it was determined that the Disclosure Statement contained such information as was reasonably practical under the circumstances of this case to permit you to make an informed judgment about the voting on the proposed Plan. The approval by the Bankruptcy Court of the Disclosure Statement means that the Statement contains "adequate information" for creditors of the Debtor to vote on the Plan.

Pursuant to §1125(a)(1) of the Bankruptcy Code, adequate information is defined as "information of a kind, and in sufficient detail as far as is reasonably practical in light of the nature and history of the Debtor, and the condition of the Debtor's books and records that would enable a hypothetical reasonable investor, typical of holders of claims or interests of the relevant class, to make an informed judgment about the Plan." No statements or information concerning the Plan or the transactions contemplated thereby have been authorized, other than statements or information contained in this Disclosure Statement and the information accompanying this

Disclosure Statement. All other statements regarding the Plan and transactions contemplated thereby, whether written or oral, are not authorized. Approval of this Disclosure Statement by the Bankruptcy Court, however, does not indicate the Bankruptcy Court recommends either acceptance or rejection of the Plan.

You are strongly urged to read the Disclosure Statement because it contains important information concerning the Debtor's history, investments, results of operation, and material litigation. The Disclosure Statement also summarizes and analyzes the Plan and presents certain forecasts and projections with respect to the post-effective date operations along with alternatives to the Plan. Please read the Plan fully and obtain independent professional advice if you deem it necessary. The definitions contained in the Plan apply to this Disclosure Statement, and each recipient hereof is urged to review the provisions of the Plan prior to reviewing the Disclosure Statement and keep it available for reference during your review of the Disclosure Statement.

For the Plan, as proposed, to be enforceable against all creditors of the Debtor, including your claim, it is necessary for the Debtor to gain acceptance of the Plan. A Plan will be deemed accepted if two-thirds in amount and one-half in the number of allowed claims of each class of impaired claims designated in the Plan indicate a willingness by affirmative vote to accept the terms of treatment as described in the Plan. Based on the foregoing, the Debtor submits the Disclosure Statement to provide each creditor entitled to vote with sufficient information concerning the background, assets, and proposed future operations, financing, and indebtedness of the Debtor in order to permit the creditor, such as yourself, to make an informed decision about the exercise of your right to vote in favor of the Debtor's Plan.

C. **<u>Voting Instructions</u>**

Accompanying this Disclosure Statement is a copy of the Bankruptcy Court Order approving the Disclosure Statement and the Voting Procedures. The Order directs important time limitations connected with the solicitation of your approval of the Debtor's Plan, including the time in which each creditor must be sent this information, the last date for filing written acceptance or rejections to the Plan by those claimants eligible to vote, the last date for filing and service of written objections to the confirmation of the Plan, fixing a date on which a report must be made on Plan voting and fixing the day and time for a hearing on the Confirmation of the Plan.

Claimants of the Debtor who are to be paid in full under the Plan and under the terms permitted by the Bankruptcy Court are conclusively presumed to have accepted the Plan, and solicitation of their acceptance is not required. Votes are being solicited only from those classes whose claims may be impaired under the Plan. It is important for you to exercise your right to vote, since the majority in number and two-thirds in amount of the solicited claimants who actually vote may bind those who do not vote. An eligible claimant who does not vote for acceptance or rejection of the Plan will have no bearing on the outcome of voting.

Further, it is important to know that, notwithstanding minimal requirements for voting for the acceptance by each individual creditor of an impaired class, the Bankruptcy Court may, on a request of the proponent of the Plan, confirm the Plan if it does not discriminate unfairly, and is fair and equitable with respect to each class of impaired claimants. If the Plan, or a modification thereof is not accepted by one or more impaired classes of claims held by creditors and is not confirmed by the Court, the Debtor may be unable to secure the necessary funds to repay its

obligations. This Disclosure Statement discusses this as an alternative. You are advised to read the relevant sections below.

**THE PLAN IS PROPOSED BY THE DEBTOR. THE DEBTOR URGES ALL CREDITORS TO VOTE IN FAVOR OF THE PLAN BECAUSE IT PROVIDES THE GREATEST AND EARLIEST POSSIBLE RECOVERY TO CREDITORS REASONABLY OBTAINABLE. YOUR VOTE IN FAVOR OF THE PLAN IS RECOMMENDED BECAUSE THE PLAN MAXIMIZES THE VALUE OF AND MINIMIZES DELAY IN RECOVERIES BY ALL CREDITORS. IT ALLOWS CREDITORS TO PARTICIPATE IN DISTRIBUTIONS IN EXCESS OF THOSE THAT WOULD BE AVAILABLE IF THE DEBTOR WERE LIQUIDATED UNDER CHAPTER 7 OF THE BANKRUPTCY CODE.**

## II. BACKGROUND OF THE DEBTOR

### A. PRIOR TO BANKRUPTCY

The Debtor is a corporation organized and existing under the laws of the State of New York. The Corporation has been owned and controlled by Federico Frazer and Imar Hutchins since its inception. Presently Messrs. Hutchins and Frazer are the sole shareholders of the Debtor. Currently Mr. Frazer is the President of the Debtor and Mr. Hutchins holds the offices of Secretary and Treasurer of the Debtor.

The Debtor is a single-asset entity which owns almost an entire city block (six parcels). formerly the site of the Taylor Lock Company ("Site"). The main Taylor Lock Building ("Main Building") is an approximately 80,000 square foot, five-story building of timber & masonry construction which is in relatively fair condition. The building is therefore, structurally sound and renovation of the property is highly feasible.

Since the original filing of the Bankruptcy Case in November of 2008 the Debtor has gone forward with the predevelopment phase of conversion of the Site into an artists' community

5

that will house artist's workspaces, studios and galleries. The first phase of the project will be the floor-by-floor renovation of the Main Building into spaces that can be rented separately. There are currently some smaller buildings that may be worth salvaging, but the majority of the Site will be torn down to develop parking spaces.

## B. EVENTS SINCE THE BANKRUPTCY FILING

There have been limited remarkable events since the commencement of the Bankruptcy Case on November 3, 2008. There is currently a motion pending before the Bankruptcy Court to approve the financing of the Debtor's general liability and property insurance payments. There is also pending a Motion for Relief from the Automatic Stay that was filed by an alleged secured creditor. The Debtor's principal did attend the Initial Debtor Interview and a Meeting of Creditors each conducted by the Office of the United States Trustee. An alleged secured creditor appeared at the Meeting of Creditors, but no official Committees have been formed in the Bankruptcy.

The Bankruptcy was filed primarily to deal with the confessed judgment filed in Pennsylvania state court by an alleged secured creditor. It is the Debtor's position that the alleged secured creditor did not legally notify the Debtor of the alleged assignment of the mortgage. The Debtor disputes the validity of the claims of the alleged mortgagee and is separately moving that any claims of the alleged mortgagee be invalidated. However, if the Court ultimately determines that the alleged mortgagee holds a valid claim, payments to that entity under the Plan shall be accomplished from the confirmed debtor's projected rental revenues from tenants in the to-be-renovated property and from the infusion of a fresh equity

contribution by new equity investors for the purposes of assisting in the Plan funding requirements.

### III.  ASSETS & LIABILITIES OF THE DEBTOR

#### A. Assets

The Debtor instituted the Chapter 11 Bankruptcy proceeding to protect its assets. As of the Filing Date, the principal asset of the Debtor is the parcel of properties located at the Site with a current estimated and undeveloped market value of approximately $1.5 million dollars.

#### B. Liabilities

The Debtor's liabilities are primarily limited to outstanding fees owed to the United States Trustee for a prior filed bankruptcy; real estate tax claims due to the City of Philadelphia (the "City"). The City has filed two Proofs of Claim with the Bankruptcy Court suggesting its total claim to be $110,596.55 and an unliquidated claim. The Debtor disputes the amount of the Claims filed by the City. These claims are for estimated tax liabilities that are subject to a tax abatement through the City's Keystone Opportunity Zone abatement program. The Debtor plans to file an application with the City for a retroactive abatement of the real estate taxes.

The Debtor has no general unsecured creditors. Any valid secured creditors will be paid according the summary of the plan detailed below.

### IV.  SUMMARY OF THE PLAN

The Debtor's proposed plan classifies the creditors' claims as follows:

1. Class I - Administrative Claims:

(a) Administrative Trade Payables. The Allowed Class I(a) Claims of all administrative trade payable creditors shall be assumed by the Reorganized Debtor on the Plan

effective date, to the extent that any administrative creditor remains unpaid on this date and paid consistent with the established course of business between the Debtor and the vendor or pursuant to existing contract terms. All monies which are due to any general administrative vendor claim shall be paid in cash on the effective date. **This class is not impaired.**

      (b) Professional Fees and Costs and Fees due to the Office of the United States Trustee System. The allowed Class I(b) administrative claims for professional fees and bankruptcy costs shall be paid in full in cash on the earliest date from or after the Effective Date of the Plan that the claim is or becomes an Allowed Claim, or is allowed by a Final Order of the Bankruptcy Court. Any fees owing to the Office of the United States Trustee for Quarterly fees up to the date of Confirmation shall be paid in cash when due. Any quarterly fees outstanding and due prior to confirmation shall be paid in cash on the Plan effective date. **This class is not impaired.**

    2.    Class II - Allowed Priority Unsecured Claims. Class II claimants shall be paid the full amount of all Allowed Priority Unsecured Tax Claims of government units together with interest at the allowed current statutory rate for existing tax claims under Title 26 of the United States Code in equal monthly installments over a period of 24 months from the date the claim of the government unit becomes an allowed claim. Payments made by the Confirmed Debtor pursuant to this Plan shall be first applied to any principal tax obligations outstanding, and upon full payment of tax liabilities, on account of interest which accrued on the tax obligations. Any claim for post-petition interest or any penalty or other non-pecuniary claim shall be deemed and treated as an unsecured claim against the Bankruptcy Estate. **This class is impaired.**

    3.    Class III – Allowed Secured Claims. Class III claimants shall be paid the full amount of their Allowed Secured Claim pursuant to the Implementation Provisions set forth below.

    4.    Class IV - Insider General Unsecured Claims. Any creditor who holds a Class IV claim as an insider will not receive any distribution under the Plan. **This class is impaired.**

8

     5.    <u>Class V - Existing Equity Interest Holders of the Debtor.</u>  Class V shall not receive any distribution under this Plan.  All existing shares of stock shall be canceled upon Confirmation of the Plan.  The interest holder may invest new equity for the purpose of acquiring shares of stock ownership in the new entity in an amount equal to or greater than the existing net equity value of all existing assets of the Debtor as of the date scheduled for a Hearing on the confirmation of the Plan. No further distribution shall be made to any pre-petition interest holder of this class.  **This class is impaired.**

    **V.**    **EFFECT OF CONFIRMATION**

Upon the Effective Date, all of the provisions of the Plan shall be binding upon the Debtor, upon all creditors, and all entities who are affected or whose interests are affected in any manner by this Plan.

**VI.  FINANCING THE PLAN**

All administrative claims will be paid from personal contributions from the Debtor's principals.  The Debtor's plan contemplates a settlement of the City's tax claims.

The present state of the world credit and financial markets is such that it would be impossible for the Debtor to refinance with another lender to pay off any valid secured creditor. Likewise bank financing for the renovation will not likely be available from any source. Therefore, the Debtor must obtain purely private capital in order to fund the renovation of the Site.  Private investors will most likely insist that their capital be used solely for renovation of the Main Building and the Site and not for payments to any valid secured creditor.  The Debtor believes that it can obtain commitments for the private capital necessary to complete the project within a 12-month timeframe to allow for regular payments of monthly interest to the any valid

secured creditor. The Debtor projects that at the end of the 12-month renovation period, the Main Building will be fully renovated and totally or partially tenanted, and at which time Debtor will utilize a regular bank to fully refinance a valid secured creditor.

The Debtor projects that it can renovate the Main Building for a total cost of $1.0 to $1.5 million. The Debtor plans to offer space to tenants at the low introductory rate of $6 per square foot that is approximately half the price of the competing project at Sherman Mills. The Debtor can offer this low rate because of the relatively basic and inexpensive planned renovation. The renovation will provide "raw space" to artists and firms who will then build their spaces out to suit. The Debtor expects to—and has already seen—a great interest from prospective tenants. All leases will be triple net leases with tenants paying for their own utilities.

New equity investors will be granted new shares of stock in the Debtor that will dilute the ownership interest of existing shareholders. The equity of existing shareholders' shares will be valued based on a present agreed-upon asset valuation of $1.6 million for the site and new equity coming in will be treated on a pari-passu basis with respect to existing equity holders. It is anticipated that an equity investment will be raised in which between $1.0 and $1.5 million will be contributed to the company for the purpose of assisting in plan funding. New and existing shares of stock in the aggregate shall be representative of the net equity value of the Reorganized Debtor. Any individual who acquires the requisite shares shall be named as a director and officer of the Reorganized Debtor and shall have an exclusive fiduciary duty to the Reorganized Debtor and its obligations under this Plan. This sum shall represent a New Value contribution to the Debtor which the Debtor believes will satisfy the absolute priority rule funding requirements of the Bankruptcy Code.

**VII**. **EFFECT OF CONFIRMATION**

    **H.**     **Legal Effects of the Plan**

A) <u>Revesting of Assets</u>.  Subject to the provisions of this Plan, the property of the estate of the Debtor not sold will revert in the reorganized Debtor on the Confirmation Date.  On the Confirmation Date, all such property of the Debtor will be free and clear of all liens, claims, interests, and encumbrances except as otherwise provided in the Plan.  Following the payment of any monies established due to the IRS and the other taxing authorities under the Plan, any liens, and claims of the IRS and the Commonwealth shall be satisfied and removed. from and after the confirmation Date, the reorganized Debtor may attend to its financial affairs, and may use, acquire and dispose of property free from any restrictions of the Bankruptcy Code, except as otherwise provided in the Plan.

B)     <u>Section 1141 Discharge.</u>  Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and the treatment of claims under the Plan will be in exchange for and in complete satisfaction, discharge, and release of all claims including any interest accrued on claims from the Petition Date.  Except as provided in the Plan or the Confirmation Order, confirmation will discharge the Debtor from all claims or other debts that arose before the Confirmation Date and all debts of the kinds specified in Sections 502(g), 502(h), and 502(I) of the Bankruptcy Code, whether or not a Proof of Claim based on such debt is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code or a claim on such debt is allowed pursuant to '502 of the Bankruptcy Code.

C)     <u>Automatic Stay.</u> The Automatic Stay which is imposed upon the filing of

11

the bankruptcy petition pursuant to 11 U.S.C. §362(a) shall remain in full force and effect consistent with the provisions of 11 U.S.C. §362(c).

    D) <u>Post Confirmation Professional Fees.</u>  Professional fees incurred by any professional retained by the Debtor pursuant to 11 U.S.C. §327 for services rendered subsequent to the effective date of the Plan shall not be subject to application before or approval by the United States Bankruptcy Court.  Post confirmation fees may be paid by the Reorganized Debtor, or from his property, upon the appropriate billing by Counsel for the Debtor.  All professional fees incurred by the Debtor in Possession for services rendered prior to the Effective Date of the Plan are subject to Bankruptcy Court Approval and to the payment deferral detailed above.

E.    <u>Retention of Jurisdiction</u>.  Upon the confirmation of the Debtor's Plan, the Bankruptcy case is deemed concluded.  Pursuant to 11 U.S.C. §350(a) and Federal Bankruptcy Rule 3022, the Bankruptcy Court shall enter a Final Decree closing the case when it is fully administered.  Local Rule 5009.1 of the Local Rules of Bankruptcy Procedure for the Eastern District of Pennsylvania requires the Clerk to give notice to close the case 180 days after a final Order confirming the Plan, unless reasons are stated by counsel to keep the case open.  Notwithstanding the foregoing, the Bankruptcy Court shall retain jurisdiction with respect to the following matters:

(a)    To enable the Debtor to consummate any and all proceedings which it may bring, prior to the entry of an Order of Confirmation, to set aside liens or encumbrances, to recover assets or damages to which they may be entitled under applicable provisions of the Bankruptcy Code or other federal, state or local laws;

(b)    To adjudicate all controversies concerning the classification or allowance of any claim;

(c)    To herein determine all claims arising from the rejection of any executory contract, including leases, and to consummate the rejection and termination thereof, or with respect to any executory contract to which an application for rejection or termination is filed prior to the entry of an Order of Confirmation;

(d)    To liquidate damages in connection with any disputed, contingent or unliquidated claim;

(e)    To adjudicate all claims to a security or ownership interest in the property of the debtor or in any proceeds thereof;

(f)    To fix the allowance of professional compensation or other

13

administrative expenses incurred by the Debtor from the commencement of the case until the effective date, provided an application is filed within thirty (30) days of the effective date of the Plan;

    (g) To consider any amendments or modifications to the Plan;

    (h) To adjudicate and determine any cause of action provided for under the Plan, provided that any such action for the purposes of adjudication under the Bankruptcy Code shall be commenced prior to the entry of an Order of substantial compliance or six (6) months after the Order of confirmation, whichever occurs first; and to make such orders as is necessary and/or appropriate to carry out and enforce the provisions of this Plan or as otherwise may be authorized pursuant to 11 U.S.C. §1142.

  F. **Modification of the Plan**

    The Debtor reserves the right in accordance with the Bankruptcy Code to amend or modify the Plan at any time prior to the confirmation date. After the confirmation date, the Debtor may, upon an Order of the Bankruptcy Court pursuant to 11 U.S.C. §1127(d) of the United States Code, remedy any defect or omission or reconcile any inconsistencies in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

  G. **Revocation or Withdrawal of the Plan**

    The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the confirmation date. If the Debtor revokes or withdraws the Plan, then the Plan will be deemed null and void and nothing contained in the Plan will be deemed to constitute a waiver of any claim by or against the Debtor or any other entity or shall prejudice in any manner the rights of the Debtor or any entity in any further proceedings involving the Debtor.

## VIII. REORGANIZED DEBTOR

Pursuant to 11 U.S.C. §1123(a)(7) and §1129(a)(5), the proponent of a Plan is required to disclose the identity and affiliations of any individual proposed to serve after the confirmation of Plan as a director, officer, or voting trustee of the Debtor. Presently Federico Frazer and Imar Hutchins are the sole shareholders.

The Plan contemplates that an investor will make a new capital contribution to the reorganized entity as a New Value investment to assist in the Plan Funding obligations. The Debtor believes this proposal will be sufficient to satisfy any concerns mandated by the absolute priority provisions of the Bankruptcy Code. The Debtor anticipates that new investors will likely make this investment. If Messrs. Frazer and Hutchins are successful in raising the necessary capital to reinvest in the business, the Reorganized Debtor proposes to retain Messrs. Frazer and Hutchins as the sole officers and directors of the Reorganized entity.

In order to satisfy interests which are consistent with those of the creditors and public policy, the Debtor pledges to act as a fiduciary to assure that creditors receive all payments to which they are entitled under the Plan. Any party interested in this entity may offer a higher and better offer to acquire the newly issued stock of this company. Any successful bidder will be obligated to make all payments required under this plan as proposed.

### IX. DISBURSING AGENT

Dispenziere & Company the Accountant for the Debtor shall be retained to act as disbursing agent pursuant to the Plan of Reorganization and shall manage and control the disbursement of all Plan payments of the Debtor while any Plan funding obligations are outstanding. The Disbursing Agent shall and agrees to comply with all requirements of Local Rule 3021-1 of the Local Rules of Bankruptcy Procedure for the Eastern District of Pennsylvania

including the filing of all reports for all distributions. The proposed Disbursing Agent is an accounting firm practicing in the state of New York and as a result it is proposed that no bond should be required pursuant to Local Rule 3016-1(e)(3). The Disbursing Agent shall be compensated by the Debtor for services rendered as the Disbursing Agent at his normal billing rates submitted on a monthly basis or as services are provided.

## X. CONFIRMATION IF ANY CLASS REJECTS THE PLAN

The Debtor presents that the instant Plan has been proposed in good faith, does not discriminate unfairly and is fair and equitable. In the event that any class of creditors rejects this proposed Plan, it is the intention of the Debtor to seek the implementation and confirmation of the Plan pursuant to the provisions of 11 U.S.C. '1129(b).

## XI.  TREATMENT OF CLAIMS

The Debtor had not previously filed a Motion to Establish a Claims Bar date. The Debtor will however, review all claims and determine which, if any, should be objected to. The Debtor reserves the right to object to any claims. It is anticipated that all Objections with respect to any claim shall be filed prior to the Disclosure Statement hearing. Presently the Debtor projects the following objections:

| *Claim No.* | *Creditor* | *Reason* |
|---|---|---|
| 2 | City of Philadelphia | Basis/Amount |
| 3 | City of Philadelphia | Basis/Amount |

## XII.  LIQUIDATION ANALYSIS

The Debtor's Plan is premised on the belief that liquidation under Chapter 7 of the Bankruptcy Code would not provide for as great a return to all creditors of the Debtor as is provided in this Plan. If the Plan is not confirmed, the case converted, and a Trustee appointed,

16

there would be an additional layer of administrative costs and expenses which would reduce annual payments to the present unsecured creditors.

The Debtor believes the Plan provides the most reasonable and realistic approach to satisfaction of the allowed claims in the most efficient manner. The Plan provides for the greatest opportunity for payments to unsecured creditors. The Plan certainly provides a greater return than would be received by unsecured creditors under a Chapter 7 liquidation.

### XIII.  FEDERAL INCOME TAX CONSEQUENCES TO HOLDERS OF CLAIMS

The tax consequences of the Plan to holder of a claim will depend, in part, on the constituency of claims, the type of consideration received in exchange for the claim, whether the holder is a resident of the United States for tax purposes, whether the holder reports income on an accrual or cash basis method, and whether the holder receives distribution under the Plan in one or more taxable year. Holders of claims are strongly advised to consult their tax advisers with respect to the tax treatment of their particular claims under the Plan. Holders of claims which do not constitute tax securities, should generally recognize gain or loss to the extent the amount realized under the Plan in respect to their claims exceeds, or is exceeded by the respective tax basis of the claims. The amount realized for this purpose will generally equal the sum of cash or the fair market value of any consideration received under the Plan and in respect to their claim. The amount realized with respect to any debt obligation received by an accrual based taxpayer, however, should generally equal the obligations principal amount, as determined for tax purposes. Any gain or loss recognized on the exchange will be capital or ordinary, depending on the status of the claim in the holder's hands. The holders' aggregate tax basis for any consideration received under the Plan will generally equal the amount realized. The holding period for any consideration received under the Plan will generally begin on the day following the receipt of such

consideration.

While the foregoing is intended only as a summary of certain federal income tax consequences of the Plan, and is not a substitute for tax planning with a tax professional, the above discussion is for informational purposes only and is not tax advice.  **TAX CONSEQUENCES IN MANY CASES ARE UNCERTAIN AND MAY VARY DEPENDING ON THE HOLDERS INDIVIDUAL CIRCUMSTANCES. ACCORDINGLY, HOLDERS OF ANY CLAIMS OR INTEREST ARE URGED TO CONSULT WITH THEIR TAX ADVISERS ABOUT THE FEDERAL, STATE LOCAL AND FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN, OR ANY DISTRIBUTION YOU MAY RECEIVE UNDER THIS PLAN.**

>NO OPINION OF COUNSEL HAS BEEN SOUGHT OR OBTAINED WITH RESPECT TO ANY TAX CONSEQUENCES OF THE PLAN, AND NO TAX OPINION IS GIVEN OR AUTHORIZED BY THIS DISCLOSURE STATEMENT.  NO RULING OR DETERMINATIONS OF THE INTERNAL REVENUE SERVICE OR OF ANY TAXING AUTHORITY HAS BEEN OBTAINED OR SOUGHT WITH RESPECT TO THE PLAN AND THE ABOVE DESCRIPTION IS NOT BINDING UPON THE IRS OR ANY OTHER TAXING AUTHORITY.

### XIV. CONCLUSION AND RECOMMENDATION

The Debtor strongly recommends that all creditors receiving a ballot vote in favor of the Plan. The Debtor believes the Plan maximizes recovery to all creditors and thus is in their best interest. The Plan as structured, among other things, allows creditors to participate in distributions in excess of those that would be received for the case converted and the Debtor's assets liquidated pursuant to a proceeding under Chapter 7 of the Bankruptcy Code or in the alternative where the Debtor's case is dismissed. For the reasons as stated, the Debtor believes that confirmation and consummation of this Plan is preferable to all other alternatives and urges creditors who are entitled to vote to vote in favor of the Plan.

Respectfully submitted,

FOR THE DEBTOR:

*CENTER CITY LAW OFFICES, LLC*

BY:*/s/Maggie S. Soboleski*
MAGGIE S. SOBOLESKI,
COUNSEL FOR DEBTOR

LIPPINCOTT PROPERTIES, INC.

BY:*/s/ Federico Frazer*_____
FEDERICO FRAZER, PRESIDENT

DATED: January 29, 2009

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| **LIPPINCOTT PROPERTIES, INC** | : | Chapter 11 |
| | : | |
| | : | Case No. 08-17249 (BIF) |
| *DEBTOR* | : | |

**DISCLOSURE STATEMENT**
**DATED JANUARY 29, 2009**

Maggie S. Soboleski, Esquire
***Center City Law Offices, LLC.***
2705 Bainbridge Street
Philadelphia, PA  19146
(215) 620-2132